IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HAL HICKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 03-CV-4004-JPG |
| | ) |
| MIDWEST TRANSIT, INC., et. al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter comes before the Court on HARRIS*direct* LLC ("Harris")'s motion for summary judgment (Doc. 100), to which plaintiff Hal Hicks ("Hicks") has responded (Doc. 110) and Harris has replied (Doc. 113). In its motion, Harris seeks dismissal of Count V – the only count remaining in this action. Also before this Court is Harris's motion for a hearing on this motion (Doc. 112). After reviewing the briefs, the Court does not believe oral arguments on this motion are necessary. Therefore, Harris's motion for a hearing on its motion is **DENIED**. For the following reasons, Harris's motion for summary judgment is **GRANTED**.

## BACKGROUND

This action arose because of Hicks's activities as part owner of Midwest Transit, Inc. ("Midwest"). In 2000, C. Michael Witters and his wife Diane (co-owners with Hicks of Midwest) sued Hicks in state court for, among other things, fraud resulting from numerous shady transactions conducted by Hicks while operating Midwest. In this action the Witters had the circuit court appoint a receiver for Midwest, Don Hoagland. Soon after his appointment, Hoagland successfully petitioned the circuit court for prejudgment attachment of Hicks's assets. Importantly, the circuit

court did not require Hoagland to post a surety bond due to its determination that he was a State officer. *See* 735 ILCS § 5/4-107.

Harris is involved in this litigation because its predecessor had custody of some of Hicks's assets – his online stock trading accounts. The circuit court issued an Order for Attachment and Summons ("attachment order") directed at Harris's predecessor DLJ*direct*, and Hicks's accounts.[2] The attachment order was served on Credit Suisse First Boston ("CSFB") at its Chicago office on July 27, 2001; the order described the attached property as follows:

> Online stock trading account with DLJ Direct, a subsidiary of Donaldson, Lufkin and Generette, c/o Credit Suisse First Boston, AT&T Corporate Center, 227 West Monroe Street, Chicago, IL 60606-5016, or DLJ Direct, a subsidiary of Donaldson, Lufkin and Generette, c/o Credit Suisse First Boston, 200 West Madison Street, Chicago, IL 60606.

Service was effected at CSFB's office at 227 West Monroe in Chicago. When CSFB's Legal and Compliance Department received the attachment order, it faxed it to CSFB*direct*'s compliance manager, Linda Rich. (Affdv't of Linda Rich) (Doc. 101 at 2). Rich examined the order and determined it to be regular on its face. (*Id.*). Accordingly, CSFB*direct* froze Hicks's accounts pending subsequent directions from the circuit court. Ten days after the circuit court entered its attachment order, Hicks moved to vacate that order claiming it was invalid because Hoagland did not post bond. The circuit court denied this motion the next day, August 7, 2001. Over a year later,

---

[2] Apparently, Hicks originally opened an online trading account with DLJ*direct*. In February 2001, DLJ*direct* became CSFB*direct*; CSFB*direct* became Harris in February 2002. The parties agree that Hicks's account was with CSFB*direct* when service of the attachment order was effected. Roughly six months later, CSFB*direct* became Harris. All these companies were internet-based discount stock brokers. (Doc. 101 at 3). The business did not change when the company changed owners. (*Id.*). In essence, customers subscribed to their services and executed self-directed stock purchases and sales. These companies neither managed accounts for their customers nor gave their customers trading recommendations. Harris (and its predecessors) effects trades for its customers and holds the securities they purchase and retain in "street name" – that is, stocks are "registered to a nominee or depositary" and accounts for its customers' ownership by book-entry." (*Id.*).

the Illinois Court of Appeals for the Fifth Circuit reversed the circuit court and vacated the attachment order because it found that the circuit court should have required Hoagland to post bond. *Witters v. Hicks*, 780 N.E.2d 713, 722 (Ill. App. Ct. 5th Dist. 2002). After receiving notice of the ruling by the appellate court, CSFB*direct* unfroze Hicks's accounts.

In Count V of the Complaint, Hicks claims Harris was negligent for complying with a facially invalid order, failing to contest the allegedly improper service against it and by failing to take "affirmative steps to challenge the defective and wrongful" orders of the circuit court.

## ANALYSIS

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). In determining whether a genuine issue of material fact exists, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396. The moving party has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. If it meets this burden, the nonmoving party must set forth facts that demonstrate the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247; *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005), or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine

issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *Insolia v. Phillip Morris Inc.*, 216 F.3d 596 (7th Cir. 2000).

This Court has previously (if briefly) addressed the issues presented in this motion. In its order of May 11, 2004, the Court held that "in Illinois . . . the law views stockbrokers as agents of their customers. They therefore have a corresponding duty to exercise all the skill, ability and industry of the broker pursuant to the specific agency purpose." (Doc. 69 at 3); *see Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 385 N.E.2d 376, 381 (Ill. App. Ct. 3d Dist. 1979). Continuing, this Court held that Hicks's "objective in this case was for Harris to safeguard his stock, which was within Harris's exclusive care and control. Thus, to the extent necessary one can draw the reasonable inference that Harris acted as [Hicks's] agent in the safekeeping of his stock." (Doc 69 at 3). In this ruling and in a subsequent ruling affirming the existence of Harris's duty to safeguard Hicks's property, this Court held that whether Harris breached its duty to Hicks was a question of fact for the jury. (Docs. 69, 85).

In its motion for summary judgment, Harris argues it should not be held liable for complying with what it believed to be a valid attachment order. It claims the attachment order was valid on its face and that it had no duty to go beyond the four corners of the document in determining its validity. In his response, Hicks argues that Harris breached the above-described duty by complying with an order that was invalid on its face. Hicks's claims the attachment order was facially invalid because the circuit court did not require a surety bond and, as the situs of his accounts was in New Jersey, service on CSFB's Chicago office was insufficient to attach these assets. He also argues CSFB*direct* was never properly served. To prevail on his negligence claim, Hicks must show that Harris owed him a duty, that it breached its duty, and that as an actual and proximate result of the

4

breach he was injured. *Cunis v. Brennan*, 308 N.E.2d 617, 618 (Ill. 1974). Harris does not make any arguments on the issues of damages or causation. Thus, the Court must determine the scope of Harris's duty and whether its actions amounted to a breach.

### A. The Scope of Harris's Duty

The existence and scope of Harris's duty is a question of law for the Court. *Brennan*, 308 N.E.2d at 619; *Ferrell v. Esparza*, 773 N.E.2d 650, 654 (Ill. App. Ct. 5th Dist. 2001); *Taake v. WHGK, Inc.*, 592 N.E.2d 1159, 1173 (Ill. App. Ct. 5th Dist. 1992); *see also Kirk v. Michael Reese Hosp. and Medical Ctr.*, 513 N.E.2d 387, 396 (Ill. 1987). Whether Harris breached its duty is a question of fact for the jury. *Adams v. Northern Ill. Gas Co.*, 809 N.E.2d 1248, 1257 (Ill. 2004).

In light of this Court's previous statements on the existence of a duty here, Harris grudgingly admits that it has "some duty to exercise reasonable care to prevent a customer's account from falling victim to embezzlement, forgery or other misappropriation where [it] is in a position to reasonably prevent the misdeed." (Doc. 102 at 6). In this situation, Harris argues its duty was circumscribed by the strong public policy supporting its obligation to comply with a court order. Thus, it claims its duty to Hicks was limited to a determination of the facial validity of the attachment order. So long as it was reasonable in determining the attachment order to be facially valid, it could not have been negligent for complying with its terms. In support of this narrow formulation of its duty, Harris directs the Court to two cases – *United States v. Morton*, 467 U.S. 822, 829 n.10 (1984) and *Millard v. United States*, 16 Cl. Ct. 485 (Cl. Ct. 1989) – which interpret a federal statute, 42 U.S.C. § 659(f), covering an analogous situation. That section provides, in relevant part, that "the United States . . . shall [not] be liable with respect to any payment made from moneys due or payable from the United States to any individual pursuant to legal process *regular on its face*. . . ." 42 U.S.C. § 659(f) (emphasis added). In *Morton* and *Millard*, both courts indicated

that a garnishee has no duty to look beyond an order appearing to be regular on its face. *Morton*, 467 U.S. at 829 n.10; *Millard*, 16 Cl. Ct. at 489.

Harris also cites to several other cases where courts have defined a garnishee's duty similarly. In *Savage v. Scales*, 310 F.Supp.2d 122, 136-37 (D.D.C. 2004), the court held that the garnishees did not have a "duty to verify the accuracy of the order for the garnishment sent to them." The district court in *Savage* suggested that the duty to comply with a garnishment order was not subject to exception. *Id*. The court also noted that a garnishee's failure to comply with such an order would subject it to liability. *Id*. In a similar case, *Walsh v. Wal-Mart Stores, Inc.*, 836 F.2d 1152, 1153 (8th Cir. 1988), a judgment debtor claimed Wal-Mart was liable for complying with a writ of garnishment it knew to be invalid. In rejecting the debtor's claim, the Eighth Circuit – applying Arkansas law – held that a garnishee has no duty to determine the constitutionality of a writ of garnishment before complying with its terms. *Id*. As in *Savage*, the court in *Walsh* felt it important that Wal-Mart would have been subject to liability if it had failed to comply with the order. *Id*.

In Illinois, "the sheriff [shall serve] the persons mentioned in [an] order for attachment as garnishees. The persons so summoned shall be considered garnishees." 735 ILCS § 5/4-126. After such a garnishee is served with an attachment order, he must thereafter hold the defendant's property and "shall not pay to the defendant any indebtedness owed to him or her subject to such order, and [the property described in the attachment order] shall be considered to have been attached and the plaintiff's claim to have become a lien thereon pending such action." 735 ILCS § 5/4-126. Thus, by law, an entity must comply with an attachment order served upon it; the statute admits of no exception. The parties have not cited to any Illinois or Seventh Circuit cases that have discussed the duties of a garnishee under similar circumstances and Hicks does not dispute this formulation.

After reviewing 735 ILCS § 5/4-126, the other provisions of the Illinois code on attachment and the cases cited by Harris, the Court believes that Harris's formulation of its duty comports with Illinois law. Under the circumstances of this case, the Court finds that Harris had no duty to look beyond the face of the attachment order to determine its validity. If Harris was reasonable in its determination that the order was facially valid, it did not breach its duty to Hicks by complying with its terms.

### B. Breach

Harris contends this Court should judge the facial validity of the attachment order by examining the "procedural aspects of the legal process involved, not the substantive issues." *Morton*, 467 U.S. at 829 n.10 (quoting *In re Matthews*, 61 Comp.Gen 229, 230-31 (1982) ("Facial validity of a writ need not be determined upon the basis of scrutiny by a trained legal mind, nor is facial validity to be judged in light of facts outside the writ's provisions which the person executing the writ may know."). In *Millard*, the court expanded on the reasoning in *Morton*, and held that "regular on its face" means "legal process whose validity, facially judged, appears to evidence a legitimate exercise of jurisdiction on the part of the issuing authority." 16 Cl. Ct. at 489. Thus, "the question is not whether there are infirmities underlying the garnishment order . . . the question is whether the order shows anything on its face that provides reasonable notice that it was issued without authority of law." *Id*. (footnote omitted). In *Millard*, the court found a garnishment order regular on its face where it stated the names of the parties, the basis for the action taken, the amounts to be withheld, the seal of the court that issued the order, the signature of the judge and the clerk's attestation that the order served represented a correct copy of the document. *Id*. As with Harris's formulation of the duty, Hicks does not dispute that this is the standard by which the Court should judge the facial validity of the attachment order. (Doc. 110 at 4).

### i.      Facial Validity of the Attachment Order

#### a.      Failure to require Surety Bond

Hicks claims Hoagland's failure to post bond made the attachment order facially invalid under 735 ILCS § 5/4-107. That section provides that before a court can enter an attachment order it "shall take bond and sufficient security . . . in double the sum sworn to be due. . . . Every order for attachment entered without a bond . . . is hereby declared illegal and void, and shall be dismissed." 735 ILCS § 5/4-107. If this were the entirety of statute, Hicks's argument would be quite persuasive. However, the remainder of the statute undercuts the force of his claim on the bond issue. The statute goes on to state that nothing therein "shall be construed to require the State of Illinois, or any Department of Government thereof, or any State officer, to file a bond as plaintiff in any proceeding instituted under Part 1 of Article IV of this Act." 735 ILCS § 5/4-107. Because the statute plainly makes an exception to the bond requirement, that the circuit court did not require bond did not necessarily provide "reasonable notice" that it was issued without legal authority.

The attachment order contained all the requisites for validity mentioned in *Millard*. The order set forth the names of the parties, a detailed explanation of the basis for the attachment, the property attached, the signature of the judge and the clerk's certification that the order was a true copy of the court's order of attachment. (Doc. 101 at 8-13). The order also indicated that the circuit court had waived the requirement of bond after considering Hoagland's Motion to Waive Bond. (Doc. 101 at 11). To require Harris to investigate the propriety of the court's application of 735 ILCS § 5/4-107 – its finding that Hoagland was a State actor – would be a substantial burden. This investigation would have to include an examination of facts upon which the court made its decision and an evaluation of its application of those facts to the relevant law. Such a determination would be time-consuming and potentially expensive. The components of facial validity discussed in

*Millard* persuade the Court that an inquiry into the propriety of the court's determination on the bond issue demands more than an examination of the "procedural aspects of the legal process involved." Given these facts, it is clear to the Court that the bond requirement issue goes to the substantive merit of the attachment order and not to whether the order was regular on its face. *See Leshore v. State*, 755 N.E.2d 164, 166 (Ind. 2001) ("Facial invalidity is not determined by comparing the statute concerning Writs of Body Attachment with the Writ ultimately issued . . . . The question is whether an examination of the four corners of the documents reveals that it is invalid.").

Illinois law provides a mechanism through which a defendant may attack the validity of an attachment order in a timely manner. Section 5/4-137 gives a defendant the opportunity to have a hearing on the validity of the attachment order that must be held within five days of service of notice of the hearing on the plaintiff. 735 ILCS § 5/4-137. At such a hearing, a presumption in favor of vacatur is entertained "unless the plaintiff demonstrates to the court the probability [by a preponderance of evidence] that he, she or it will ultimately prevail in the action." 735 ILCS § 5/4-137. Thus, the procedure at these hearings tilts in favor of a defendant. Here, Hicks exercised his right under this section and at the hearing the court rejected his argument on the bond issue. Apparently, Hicks believes Harris had an obligation to make this same argument to the circuit court. Imposing such a duty on a garnishee would place the burden of attacking the validity of an attachment order equally upon the defendant and the garnishee. This notion is not supported by any authority Hicks has presented to the Court. Perhaps more reasonably, Hicks would have had Harris refuse to comply with the attachment order. This is troublesome for the same reasons as before. Not only would Harris still have to undertake the investigation previously mentioned to be reasonable in taking such a position, but it would be subject to liability for failing to comply with the court's

order. In light of these concerns, the Court believes that requiring a garnishee to go beyond the face of the order is an inappropriate allocation of the responsibility for contesting the validity of an attachment order. For the foregoing reasons, the Court finds that there is no genuine issue of material fact on reasonableness of Harris's conclusion that the attachment order was facially valid as a result of the bond issue.

### b.   Circuit Court lacked Jurisdiction over CSFB*direct*

Hicks also claims the circuit court lacked the power to attach assets held by CSFB*direct*. Hicks makes two arguments on this score. First, under § 5/4-112, he claims the circuit court was without the power to issue an order of attachment in Cook County because it sits in Lawrence County. Second, Hicks claims the situs of his accounts was actually New Jersey, and thus beyond the power of the circuit court's attachment order.

In support of his first argument on the jurisdiction issue, Hicks directs the Court to the plain language of § 5/4-112. Under that section, an "order for attachment may be levied only in the county in which the order is entered." 735 ILCS § 5/4-112. Because the circuit court entered the order in Lawrence County, Hicks claims it had no power to attach assets in Cook County. To counter this assertion, Harris cites § 5/4-118, titled "Certified copies of order to other county". It provides that the "creditor may, at the same time, or at any time before judgment, cause a certified copy of an order for attachment to be issued to any other county in the State where the debtor may have property liable to be attached, which shall be levied as other certified copies of orders for attachment." 735 ILCS § 5/4-118. Though the Illinois cases dealing with this issue are not recent, they make clear that a circuit court has the power to attach assets outside the county in which it sits so long as the suit itself was commenced in the proper county (*i.e.*, so long as the issuing court has personal jurisdiction over the defendant), *Haywood v. McCrory*, 33 Ill. 459, 464; 1864 WL 2954 (Ill.

1864), and the garnishees served outside the county are holding the debtor's assets, *Lord v. Babel*, 16 Ill.App. 434, 437; 1885 WL 8270 (Ill. App. Ct. 1st Dist. 1885); *Knebelkamp v. Fogg*, 55 Ill.App. 563, 568-70; 1894 WL 2713 (Ill. App. Ct. 3d Dist. 1894). Therefore, the fact that the circuit court in Lawrence County issued an attachment order directed at a garnishee in Cook County does not make the attachment order facially invalid.

Hicks's second argument on this issue requires a more thorough analysis. Hicks claims that to attach his online accounts Hoagland would have had to serve CSFB*direct* in New Jersey. As Hicks points out, he opened his account with CSFB*direct* through its New Jersey headquarters, CSFB*direct* maintained and administered its accounts in New Jersey, the correspondence between Hicks and CSFB*direct* was through New Jersey, the deposits, withdrawals and stock transactions were conducted in New Jersey, stock certificates issued in connection with the purchase and sale of securities in Hicks's accounts were held in CSFB*direct*'s depository in New Jersey, and there is no indication Hicks had contacts with CSFB*direct*'s branch office located in Chicago. Hicks believes these facts make a genuine issue of material fact as to the propriety of service (and therefore the facial validity of the order) in Chicago.

Harris argues Hicks has presented an incomplete statement of the factual background here. It points out that Hicks opened his account with DLJ*direct* over the internet and when doing so, he gave his address as Sumner, Illinois. Harris sees significance in this fact because "it could be argued" (Harris's use of the passive voice makes it unclear whether *it* is making that particular argument) that this shows that the situs of the accounts is really in Sumner. Harris also notes that CSFB*direct* did business and maintained offices in Chicago. That CSFB*direct* conducted business in Illinois and had offices here is the linchpin of Harris's subsequent arguments. As these facts show that CSFB*direct* was subject to personal jurisdiction in Illinois, Harris claims the circuit court had

jurisdiction over the accounts under certain provisions of the Uniform Commercial Code and under general Illinois common law.

As a general matter, when a broker holds an individual's securities in street name, a court having jurisdiction over the broker has jurisdiction over the accounts. Section 810 ILCS § 5/8-112(c) – the Illinois version of U.C.C. § 8-112(c) (1977) – provides that the "interest of a debtor in a security entitlement may be reached by a creditor only by legal process upon the securities intermediary with whom the debtor's securities account is maintained." 810 ILCS § 5/8-112(c). As the comment to this section explains:

> Subsection (c) provides that a security entitlement can be reached only by legal process upon the debtor's security intermediary. Process is effective only if directed to the debtor's own security intermediary. If Debtor holds securities through Broker, and Broker in turn holds through Clearing Corporation, Debtor's property interest is a security entitlement against Broker. Accordingly, Debtor's creditor cannot reach Debtor's interest by legal process directed to the Clearing Corporation.[3]

U.C.C. § 8-112(c), cmt. 3 (1977). Recognizing that securities are often held by brokers in street name, U.C.C. § 8-317(4) – a provision similar to § 5/8-112(c), the Illinois version of which has been repealed in favor of § 8-112(c) –

> provides that the debtor's account can be reached by process upon the entity upon whose books the interest of the debtor appears. This appears to be the most effective way of preventing the transfer of the debtor's interest and thus protecting the creditor. It is only that entity that is aware of the debtor's interest, *irrespective of where the securities are located* or in what name they happen to be registered.

---

[3] Some definitions are necessary to understand this paragraph. An entitlement holder is "a person identified in the records of a securities intermediary as the person having a security entitlement against the securities intermediary." Securities intermediary "means (i) a clearing corporation; or (ii) a person, including a bank or broker, that in the ordinary course of its business maintains securities accounts for others and is acting in that capacity." Security entitlement "means the rights and property interest of an entitlement holder with respect to a financial asset specified in Part 5." Broker "means a person defined as a broker or dealer under the federal securities laws, but without excluding a bank acting in that capacity." 810 ILCS § 5/8-102.

U.C.C. § 8-317(4), off. reasons for 1977 change (1977) (emphasis added).

According to Harris, *the* way to attach an account such as Hicks's was to serve the attachment order on his broker, CSFB*direct*. Thus, it claims that service on CSFB in Chicago conferred jurisdiction over the account "irrespective of where the securities are located." *Id*. A problem arises here due to a conflict with the plain language of § 5/4-118. Under that section, a creditor may attach a debtor's assets in "any other county in the State where the debtor may have property liable to be attached." 735 ILCS § 5/4-118. This section seems to indicate that the debtor's assets must actually be in the county where the attachment order is served. However, to the extent these provisions conflict, the U.C.C. probably governs because it specifically addresses securities. *See Crawford County State Bank v. Marine American Nat. Bank*, 556 N.E.2d 842, 854 (Ill. App. Ct. 4th Dist. 1990). Importantly, it also appears that the situs of Hicks's accounts is a disputed issue of fact. Whether that fact is material depends on whether the attachment order would have been facially invalid if the accounts were actually in New Jersey. *See Harper*, 433 F.3d at 525 ("An issue of fact is 'material' if it is outcome determinative. . . .") (internal citation and quotation marks omitted). After reviewing the general attachment provisions and the provisions of the U.C.C. cited by the parties, it is still not clear whether the securities had to have been located in Illinois for the attachment order to be facially valid.

Harris attempts to sidestep this lack of clarity in the statutory provisions by arguing that the attachment order was valid on its face under general Illinois common law. *See In re Marriage of Kosmond*, 830 N.E.2d 596 (Ill. App. Ct. 1st Dist 2005). In that case, a husband embroiled in a dissolution proceeding successfully petitioned the circuit court to enter a TRO freezing martial assets his wife had transferred to a bank account in her own name in Germany. *Id*. at 597. The bank moved to dissolve the TRO because it claimed the court lacked jurisdiction over the wife's accounts.

*Id*. at 598. Specifically, the bank argued that to issue such an order, the court had to have personal jurisdiction over the bank *and* jurisdiction over the *res* (*i.e.*, the account). *Id*. The court rejected this argument. *Id*. at 599-600. Characterizing *in rem* and *quasi in rem* jurisdiction as alternatives to *in personam* jurisdiction, the court held that jurisdiction over the *res* was unnecessary because the court had personal jurisdiction over the bank. *Id*. at 600. As the bank did business and maintained an office in Illinois, the court found that the circuit court had jurisdiction under 735 ILCS § 5/2-209(b)(4) to reach the wife's assets despite the fact that they were in Germany. On this point, Harris also cites *Bank of Montreal v. Clark*, 108 Ill.App. 163; 1903 WL1537 at *1 (Ill. App. 1st Dist. 1903). In that case, a Chicago branch of a Montreal-based bank was served with a garnishment order directed at an account maintained at an unrelated branch of that bank in Toronto, Canada. 1903 WL 1537 at *2. The branch manager of the Chicago branch did not inform the Toronto branch of the garnishment and the circuit court held that the Bank of Montreal was liable for this failure. *Id*. at *2. In affirming this holding, the appellate court found that the branch manager had a duty to act for the creditor's protection and that his failure to notify the Toronto branch was a breach of that duty. *Id*. at *2. By so holding, the court implicitly found that service of process on a local branch of a bank was sufficient to confer jurisdiction over the account held in a branch outside of the court's jurisdiction.

     Hicks downplays the persuasive effect of these decisions. In the first place, he argues that *Kosmond* is distinguishable because the German bank's branch office was within the jurisdiction of the circuit court that entered the TRO. This Court, however, does not believe that this distinction is meaningful in light of its interpretation of § 5/4-118. Hicks also rejects the authority of these and other cases cited by Harris because they deal with garnishments rather than attachments. Beyond this facile assertion, Hicks does not elaborate on how the distinctions are meaningful here. Thus,

the Court will not consider this argument. In line with this Court's determination of the scope of Harris's duty here, the relevant question is whether the attachment order was valid on its face. Hicks makes a number of arguments which persuasively challenge the validity of the attachment order. In the Court's view, Harris's arguments are quite persuasive as well. The statutory provisions relevant to this inquiry appear to the Court to be contradictory. In that same vein, the cases cited by parties go both ways.

In view of this rather muddy state of the law, the Court is quite hesitant to conclude that the attachment order was facially invalid. The scope of the inquiry the Court has undertaken reinforces this hesitancy. To determine the validity of the attachment order on the level that Hicks suggests would force a garnishee in Harris's position to conduct a review similar to that this Court has undertaken here. This is simply too great a burden to place on every garnishee every time an order of attachment or garnishment is served on it. The party properly chargeable with this responsibility is the defendant. At the hearing to which any defendant in Hicks's position is entitled, the burden would actually be substantially less given the presumptions afforded them. *See* 735 ILCS § 5/4-137. For these reasons, the Court finds that Hicks's assertions of invalidity go to the substance of the order. Even if the Court were inclined to agree with Hicks's construction of the law, the Court does not believe that a reasonable person would find the state of the law clear enough to make the attachment order at issue here invalid on its face.

### ii.     **Insufficient Service of Process**

Finally, Hicks argues that service was ineffective here because it was CSFB that was served, not CSFB*direct*. As CSFB*direct* was never served, Hicks claims it was negligent in honoring the attachment order. This view is supported by the comment to § 5/8-112(c). The final sentence of the comment to that section states that "Debtor's creditor cannot reach Debtor's interest by legal process

15

directed to the Clearing Corporation." 810 ILCS § 8-112(c), cmt. 3 (1977). On the other hand, as Harris correctly points out, Hicks has previously stated to this Court that Midwest served the attachment orders "upon CFSBDirect's [sic] branch office located in Chicago, Illinois . . . ." (Doc. 62 at 2). Harris essentially claims Hicks has waived this argument. Beyond this, Harris believes that to deny its motion for summary judgment on this ground would "impermissibly elevate form over substance." (Doc. 113 at 4). Again, Harris cites *Kosmond* and *Bank of Montreal*. In *Kosmond*, the more recent case, the court recognized that Illinois courts are in the small minority (a minority perhaps of one) that do not apply the separate entity rule - the rule that "treats each branch of a bank as a separate entity for the purpose of seizing assets or deposits." *Kosmond*, 830 N.E.2d at 601 (citing *Bank of Montreal*, 108 Ill.App. at 166-67). By rejecting this rule, the Illinois Courts accept the proposition that service upon one branch of a bank is sufficient to bind another branch holding assets subject to garnishment/attachment outside a court's jurisdiction. *See id*; *Bank of Montreal*, 108 Ill.App. at 166-67. Harris's reading of *Kosmond* is quite broad. It is unclear whether the relationship between CSFB*direct* and CSFB is the same or similar to the relationship between a bank and its branches. In the end, the key question in this case is whether the order was facially invalid. Even if the Court were to reject Illinois' rejection of the separate entity rule upon a finding that the Supreme Court of Illinois would no longer follow this rule today, this does get Hicks past the fact that defects in service can be waived. *La Salle Bank, N.A. v. DeCarlo*, 783 N.E.2d 211, 217 (Ill. App. Ct. 2d Dist. 2003); *In re Marriage of Gorman*, 671 N.E.2d 819, 824 (Ill. App. Ct. 1st Dist. 1996). Further, it cannot be forgotten that there is authority which suggests CSFB could have been liable if it had failed to notify CSFB*direct*. *See Bank of Montreal*, 108 Ill.App. at 166-67. In the end, the Court does not believe that this defect in service made Harris negligent. Service is the means by which the court acquires personal jurisdiction in a case. *Whitley v. Lutheran Hospital*, 392

N.E.2d 729, 732 (Ill. App. Ct. 3d Dist.1979). If Harris had the power to waive any defect in the personal jurisdiction of the circuit court, it cannot be found negligent for complying with an attachment order that may, or may not have been – given the existence of authority for the proposition that service was proper irrespective of the dissimilarity in corporate affiliation – served improperly. For these reasons, the Court finds that any defect in the service of the attachment order here could not have made Harris's compliance with the attachment order negligent.

### CONCLUSION

Harris's motion for summary judgment (Doc. 100) is **GRANTED**. Harris's motion for a hearing on its motion (Doc. 112) is **DENIED**. The **Clerk of the Court** is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED**

**DATED: March 9, 2006**

                                             /s/ J. Phil Gilbert
                                             **J. Phil Gilbert**
                                             **U.S. District Judge**